**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| REBECCA GOOD,<br><br>Petitioner,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE; U.S. DEPARTMENT OF HOMELAND SECURITY; FEDERAL BUREAU OF INVESTIGATION; TODD BLANCHE, in his official capacity as Attorney General of the United States; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; and KASH PATEL, in his official capacity as Director of the Federal Bureau of Investigation,<br><br>Respondents. | Case No. 0:26-mc-00025-ECT-DTS<br><br>Hon. Eric C. Tostrud |

**PETITIONER'S MEMORANDUM IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS AMENDED MOTION FOR RETURN OF PROPERTY**

Respondents' motion asks the Court to dismiss this Rule 41(g) action on two factual propositions: that the federal government transferred to the Minnesota Bureau of Criminal Apprehension ("BCA") Petitioner Rebecca Good's Honda Pilot and everything that was in it when federal agents seized it on January 7, 2026, and that the federal government has been conducting an investigation of the shooting that would have justified holding the vehicle in the meantime. From those premises the government reasons that no factor favors the exercise of equitable jurisdiction. ECF 37 at 4–7.

Both premises are contested, and the government has offered almost nothing to prove them. On the transfer, it relies on a two-page supplemental declaration from a now-retired agent who says that when he earlier wrote "the Honda Pilot at issue in this matter

and all its contents," he "meant" the vehicle and all personal property in it on January 7. ECF 38 ¶ 4. The declaration does not say what was in the vehicle on January 7, what was in it on June 29, or how the declarant knows either. On the investigation, the government offers no evidence at all, only a sentence of attorney representation and a footnote citing a press conference and a confirmation hearing. ECF 37 at 2–3 & n.2. That representation contradicts repeated statements by the most senior officials in the Department of Justice that no federal investigation existed. ECF 29 at 4–5.

Rule 41(g) provides the mechanism for resolution of factual issues. It provides that the Court "must receive evidence on any factual issue necessary to decide the motion." Fed. R. Crim. P. 41(g). Each of the equitable factors the government invokes turns on facts that are disputed and that only the government knows. The proper course is not to dismiss on a bare affidavit and attorney say-so, but to hold the evidentiary hearing the Rule requires. If, after that hearing, the Court is satisfied that the government has fully divested itself of every item of Petitioner's property and retains no right to retake it, the Court can then decide whether it should continue to exercise jurisdiction. But the Court should not dismiss before the facts are known.

## BACKGROUND

### A. The Government's Evidentiary Showing

The history of the seizure is set out in the Amended Petition. ECF 29 at 2–9. In support of its first motion to dismiss, the government filed under seal a declaration from an FBI agent stating that he personally observed "the Honda Pilot at issue in this matter and all its contents" being transferred to the BCA on the morning of June 29, 2026, together

with a property receipt from that date listing only the Honda Pilot. The declaration did not describe what the vehicle's contents were, on either January 7 or June 29, and did not describe the terms on which the vehicle was moved.

With the present motion, the government filed a two-page supplemental declaration from the same declarant, who states that he was "[u]ntil very recently" an FBI special agent and who now signs as "Special Agent (retired)." ECF 38 ¶ 1 & p. 2. The declarant acknowledges that his information "includes information received from other law enforcement agencies, officers, and other personnel as well as information I learned directly," without distinguishing between the two. *Id.* ¶ 2. Its only substantive statement is that when the declarant earlier referred to the vehicle "and all its contents," he "meant both the vehicle and all personal property contained in the vehicle at the time of its seizure on January 7, 2026." *Id.* ¶ 4. No inventory accompanies the declaration, and it does not address whether the government reserved any right to re-examine or repossess the vehicle or whether the transfer was conditioned in any way.

Petitioner, by contrast, has sworn to a list of specific categories of personal property that were in the vehicle when it was seized, including her partner's wallet and identification, keys, their child's car seat, bags and purses, personal documents and mail, and clothing. ECF 32 ¶¶ 6–8. She has never received an inventory from the federal government, has not been told where the property is, and has not been told whether any federal agency, officer, or employee "currently has possession, custody, or control of it." *Id.* ¶ 10.

As to the investigation, the government submits no declaration. Its memorandum states that "the undersigned is now authorized to disclose that the United States is currently conducting such an investigation," and a footnote cites a June 16, 2026 press conference and a July 20, 2026 confirmation-hearing answer. ECF 37 at 2–3 & n.2. The memorandum does not say when the investigation began, who is conducting it, whether it concerns the conduct of Agent Ross, or whether any examination or testing of the vehicle was ever performed while the vehicle was in federal custody.

After the government filed its first declaration, counsel conferred, and the parties were unable to come to an agreement regarding provision of information that would suffice for Plaintiff to dismiss this action. After the Court denied the government's first motion to dismiss, Petitioner's counsel wrote again on October 6, 2026, stating that Petitioner remained open to discussion about dismissing the petition if the government would provide certain sworn representations, all of which were directed at ascertaining whether any of the subject property remained in the government's possession, custody, or control: (1) that, consistent with government counsel's prior representations, no personal property was removed from the vehicle, and the vehicle was not altered, between January 7 and the transfer; (2) the basis for the declarant's knowledge on those points; (3) whether any federal inventory of the vehicle was conducted; (4) whether the government has any other means of verifying that what was transferred matched what was seized; and (5) the government fully relinquished possession and control to the BCA, has no arrangement to retain any possession or control, and has no intent to repossess the property. Ex. 1 at 1. The government provided none of them and declined to engage any further. It replied that it

would "simply move forward with a new motion to dismiss" in light of "the very broad scope of your October 6 demand." Ex. 2 at 1. The present motion followed.

## ARGUMENT

### I. Rule 41(g) Requires the Court to Receive Evidence on Disputed Facts Before Deciding the Motion.

The text of the Rule is mandatory: "The court must receive evidence on any factual issue necessary to decide the motion." Fed. R. Crim. P. 41(g). The Eighth Circuit has enforced that command. "A district court must hold a hearing on a defendant's Rule 41(g) motion if there is a dispute 'regarding who has custody or is entitled to possession of the subject property,'" although "the Rule does not require a hearing on every motion." *United States v. Bailey*, 206 F. App'x 650, 653–54 (8th Cir. 2006) (quoting *United States v. Timley*, 443 F.3d 615, 625 (8th Cir. 2006)). The government cites *Bailey* for the proposition that a motion may be denied as "premature," ECF 37 at 6, but *Bailey* involved a convicted defendant seeking return of "evidence of his crime" while his own appeal was pending, and the denial was "without prejudice" to renewal after the appeal. 206 F. App'x at 654.

The allocation of burdens confirms the point. Once a movant shows that property was seized from her, she "is presumed to have a right to its return," and "[t]he government must then establish a legitimate reason to retain the property." *Jackson v. U.S.*, 526 F.3d 394, 396–97 (8th Cir. 2008). When the government's response is that it no longer has the property, the Third Circuit decision the government itself cites holds that "[t]he government must do more than state, without documentary support, that it no longer possesses the property at issue," and that the district court "must determine, in fact, whether

the government retains possession of the property; if it finds that the government no longer possesses the property, the District Court must determine what happened to the property." *United States v. Albinson*, 356 F.3d 278, 281 (3d Cir. 2004) (quoting *United States v. Chambers*, 192 F.3d 374, 377–78 (3d Cir. 1999)); *see* ECF 37 at 6–7 (citing *Albinson*). "Allowing the government to defeat a Rule 41(g) motion simply by asserting that it no longer retains possession of the property would frustrate the purpose of the" evidentiary inquiry. *Albinson*, 356 F.3d at 283. The Eighth Circuit applies the same approach. In *Jackson*, the property had been "seized from Jackson and shortly transferred to" a third party, and the court held that even where "[t]he government does not have possession," the district court "retains equitable jurisdiction under Rule 41[(g)] to resolve issues of fact that may help to determine whether" an alternative claim "is cognizable." 526 F.3d at 397–98 (quoting *U.S. v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001)).

The Eighth Circuit's pre-indictment cases are to the same effect. In *Black Hills Institute*, the court remanded "with directions to hold a hearing at its earliest possible convenience." *Black Hills Inst. of Geological Rsch. v. U.S. Dep't of Just.*, 967 F.2d 1237, 1241 (8th Cir. 1992). In *Lindell*, the court reversed a district court's refusal to exercise equitable jurisdiction and, "[b]ecause the record ha[d] not been developed," remanded "for the district court to hold a prompt hearing and balance the government's interest in retaining" the property "against [the owner's] right to get the property back." *Lindell v. United States*, 82 F.4th 614, 622 (8th Cir. 2023).

The government's contrary theory, stated in correspondence, is that a "freestanding 41(g) case" is not the place for resolution of factual issues. Ex. 1 at 2. That has it backwards.

Where the government's jurisdictional argument depends entirely on contested facts within its exclusive knowledge, the factual/merits inquiry and the jurisdictional inquiry are the same inquiry, and Rule 41(g) instructs the Court on how to conduct it.

## II. The Motion Rests on Factual Propositions the Government Has Not Established.

### a. What was in the vehicle on January 7, and what was transferred on June 29.

The government's motion describes the supplemental declaration as "further sworn testimony" that "answers the central factual question posed by both Petitioner and the Court." ECF 37 at 2. It does not. The declaration simply asserts that the property seized in the vehicle on January 7 was transferred to the BCA on June 29, with no explanation of the basis for that representation or for how the declarant purports to know that information. The declaration identifies no item of property. It does not state that the declarant was present at the seizure, that anyone inventoried the vehicle on January 7 or June 29, or that he compared the contents on the two dates, and it blends personal knowledge with information "received from other law enforcement agencies, officers, and other personnel" without saying which is which. ECF 38 ¶ 2. The only contemporaneous document, the June 29 property receipt, lists the vehicle alone. ECF 25-1. And the declarant has since retired, which bears on his ability to speak to the government's present custody or intentions at all. ECF 38 ¶ 1.

Against that, Petitioner has sworn to a detailed list of personal property, and has sworn that no inventory has ever been provided and nothing has been returned. ECF 32 ¶¶ 7–11. Whether all of that property was in the vehicle on June 29, whether any of it was

removed, examined, or retained by any federal agency in the intervening months, and whether the vehicle itself was altered are questions on which the record is unclear and contested. The government could easily choose to provide the bases for its sweeping representations, and its wholesale failure to do so raises more questions than answers. Plaintiff repeatedly requested that the government do so, but it declined, instead relying on bare, unexplained assertions.

**b. Whether the government has divested itself of possession and control.**

The Court denied the first motion in part because the government "had not disclaimed the ability to repossess or examine the vehicle in the future," so that "just because the BCA possesses the vehicle today does not mean Respondents lack the right to possess the vehicle in the future or that they will not exercise that right." ECF 28 at 2. Rather than disclaim any right to retake the property, the motion asserts that the newly disclosed investigation "would authorize the federal government to retain custody of the vehicle and its contents," and that the government "[n]onetheless" chose to leave it with the BCA "given the State's concurrent investigation." ECF 37 at 3. It describes the state investigation as "parallel to the federal one." *Id*. at 6.

Nor has the government said anything about the terms of the transfer: whether the BCA holds the vehicle for the use of both investigations, whether the government can direct its return, or whether any agreement governs its handling. ECF 29 at 16. Those facts matter because Rule 41(g) reaches property the United States "actually possesses" or "constructively possesses." *United States v. Story*, 170 F. Supp. 2d 863, 866 (D. Minn. 2001) (describing circumstances in which then-Rule 41(e) could require return of "items

seized by state officials" where the United States "actually possesses the property or constructively possesses the property"). The government's only answer, that "[t]he United States no longer possesses any of the property at issue and cannot therefore be ordered to return it," ECF 37 at 7, is an assertion by counsel; no declarant has said it. If it is true, the government can prove it in a few sentences under oath, as Petitioner asked it to do. Ex. 1 at 1. Its unwillingness to do so is itself reason to doubt that the matter is as simple as the motion makes it sound.

**c. Whether a federal investigation exists, when it began, and what it has involved.**

The government's factor-by-factor argument depends on its representation that "the United States is currently conducting" an investigation. ECF 37 at 2, 4. There is no evidence of that in the record. The government has filed two declarations in this case, and it cites neither for the existence of an investigation. The only support offered is counsel's statement that he "is now authorized to disclose" the investigation, and a footnote citing a June 16, 2026 press conference and a July 20, 2026 confirmation-hearing answer in which the Attorney General "expect[s]" cooperation from "who's ever on the federal side of the investigation." *Id*. at 2–3 n.2. Argument of counsel is not evidence.

Even taken at face value, the footnote does not help the government on the questions that matter. The earliest public reference it cites is June 16, 2026, more than five months after the seizure and less than two weeks before the vehicle was moved to the BCA. The record otherwise reflects that in January 2026 the now-Attorney General stated there was "currently no basis for a criminal civil rights investigation," reaffirmed days later that

investigating "was not the case when it happened and is not the case today," that the head of the Civil Rights Division declined to consider opening one, and that the FBI's April 2026 FOIA denial did not invoke the exemption for records that could interfere with enforcement proceedings. ECF 29 at 4–5, 8 n.9; ECF 30-3. Public reporting indicates that agents preparing to execute a warrant on the vehicle were ordered to stop. ECF 29 at 14–15. Whether a federal investigation existed between January and June (and whether one exists now), when any purported investigation began, whether it concerns Agent Ross, and whether the vehicle was ever examined or altered in federal custody are genuinely disputed, and the government has said nothing about them under oath.

The contrast with *Wilansky v. United States*, 326 F. Supp. 3d 784 (D. Minn. 2018), on which the government relies, is instructive. There, the United States "immediately commenced an investigation," a grand jury investigation began within a month, and in opposing the return motion the government "rel[ied] on the ex parte declaration of an FBI special agent, which describe[d] the ongoing criminal investigation, including testing that ha[d] been performed on the seized property." *Id.* at 788–89, 791. The court was able to weigh the factors because the government gave it evidence to weigh. Here the government asks for the same result without any evidence.

## III. Each Equitable Factor Turns on the Disputed Facts.

The government frames the inquiry under *Matter of Search of 4801 Fyler Avenue*, 879 F.2d 385, 387 (8th Cir. 1989), and *Black Hills*, 967 F.2d at 1239–40: callous disregard of the Fourth Amendment, irreparable injury, lack of an adequate remedy at law, and the

movant's individual interest in and need for the property. ECF 37 at 4. Petitioner addressed those factors in the Amended Petition, ECF 29 at 10–16. The point here is narrower: none of the first three factors can be resolved against Petitioner without first deciding the factual questions the government has declined to answer.

**a. Callous disregard and the reasonableness of the continued seizure.**

Petitioner does not challenge the initial seizure of the vehicle, and the government treats that as the end of the first factor. ECF 37 at 4. But where the legality of the seizure is not challenged, the Eighth Circuit "looks not to the legality of the seizure, but the reasonableness of it," *Black Hills*, 967 F.2d at 1239, including its duration. *Wilansky*, 326 F. Supp. 3d at 790–91 ("the unreasonable length of time that the Government has held the seized property without charging the plaintiff with any criminal offense . . . may well involve a callous disregard for constitutional rights") (quoting *Mr. Lucky Messenger Serv., Inc. v. United States*, 587 F.2d 15, 17 (7th Cir. 1978)). "The pivotal deprivation" in such a case is "not the initial seizure . . . but the refusal to return" the property once it is no longer "required as evidence." *Lathon v. City of St. Louis*, 242 F.3d 841, 843 (8th Cir. 2001). And "[t]he reasonableness of holding onto seized property is not dependent on the government's belief it has 'an ongoing evidentiary need.'" *Lindell*, 82 F.4th at 621.

Whether the government's retention of the subject property is or was reasonable therefore depends entirely on what the government was doing with it. If, as its senior officials repeatedly said, there was no federal investigation, then the government held (or continues to hold) a citizen's property for many months, refused access to the owner and to state investigators executing a warrant, and did so for no evidentiary purpose at all. ECF

29 at 6–9. That would be an obviously unreasonable continued seizure, and one calculated to frustrate the only investigation that was actually under way. If, instead, a federal investigation existed from the outset and the vehicle was examined and preserved in its service, the analysis is different. The Court cannot know which account is true, or when one became the other, without evidence about whether and when an investigation began, what was done with the vehicle, and what was retained. The government has failed to provide any such information.

**b. Irreparable injury and adequate remedy at law.**

The government argues that any irreparable harm and any inadequacy of legal remedies were "mitigated months ago" by the transfer to the BCA. ECF 37 at 5–6. Whether that is so depends on the same unresolved facts. If any of the personal property Petitioner has described was not transferred, then it remains in federal hands and nothing has been mitigated. If the government retains the right to retake or re-examine the vehicle, as its motion suggests, then the risk of degradation and loss that Petitioner's expert described, ECF 31 ¶¶ 10–12, has been deferred, not eliminated. In *Black Hills*, a "prima facie showing that this damage is probable and remedial steps are necessary" was enough to warrant a hearing on custodianship. 967 F.2d at 1240-41. The suggestion that Petitioner can simply subpoena the BCA in her civil cases, ECF 37 at 6, assumes that the BCA has everything, that the federal government has nothing, and that it will not reclaim the property before discovery runs its course.

The government also asks what Petitioner could possibly want the Court to do if the property is in state hands. ECF 37 at 7. That question, of course, presupposes the answer

to the foregoing factual questions. But in any event, the Eighth Circuit has answered the government's question. Where the government no longer possesses the property, the district court "should grant the movant . . . an opportunity to assert an alternative claim for money damages," and "also retains equitable jurisdiction under Rule 41[(g)] to resolve issues of fact that may help to determine whether such an alternative claim is cognizable." *Jackson*, 526 F.3d at 398 (quoting *Hall*, 269 F.3d at 943). For instance, if the federal government unreasonably continued seizing Plaintiff's property for months on end, and did not do so pursuant to the police power (because it intended to conduct no investigation), then petitioner could conceivably have compensable taking for which she could seek relief under the Tucker Act or Little Tucker Act. *See Jenkins v. United States*, 71 F.4th 1367, 1373 (Fed. Cir. 2023) ("While the United States' police power may insulate it from liability for an initial seizure, there is no police power exception that insulates the United States from takings liability for the period after seized property is no longer needed for criminal proceedings."). The Court retains jurisdiction to explore the factual questions that would "determine whether such an alternative claim is cognizable." *Jackson*, 526 F.3d at 398.

**c. Individual interest and need.**

The government concedes that Petitioner "has an ownership interest in the vehicle." ECF 37 at 6. Her affidavit establishes her interest in the personal property as well. ECF 32 ¶¶ 3, 6–7. Her need for the property, to permit an independent examination of the evidence of her partner's killing and to support the civil actions she has now filed, is the same need this Court found to favor jurisdiction in *Wilansky*, where the movant sought her property

"for determining the cause of her injury and seeking redress for that injury." 326 F. Supp. 3d at 794. This factor favors Petitioner on any view of the disputed facts.

**IV. The Proper Course Is the Hearing Rule 41(g) Requires.**

The government's renewed mootness argument, ECF 37 at 3, fails for the reasons the Court already gave: the government has failed to meet its heavy burden to show that it no longer possesses the subject property and that its possession of the property cannot reasonably be expected to recur. *See* ECF 28 at 2. Indeed, as noted above, the factual underpinning of its argument is, at best for the government, uncertain and contested. Its jurisdictional argument fails for the same reason. The factors that govern that inquiry ask what the government did with the property, why, for how long, and what it possesses now. The motion answers those questions by bare assertion and asks the Court to treat the assertions as established.

Petitioner does not seek a hearing for its own sake. Before this motion was filed, her counsel told the government they would discuss dismissal if the government provided sworn and verifiable answers to specific, targeted questions directed at the core issues. Ex. 1 at 1. The government declined. If the government answers those questions, through a declarant(s) with personal knowledge and whatever inventory or chain-of-custody records exist, the need for a hearing may well disappear. The government has instead provided a declaration that answers nothing and an attorney representation about an investigation that no sworn government witness has been willing to make. On that record, Rule 41(g) leaves the Court one course: to "receive evidence on any factual issue necessary to decide the

motion." Fed. R. Crim. P. 41(g). If the Court is satisfied after that hearing that the government has divested itself of all of Petitioner's property and retains no right to it, it can then consider whether continued exercise of its equitable jurisdiction is warranted. It should not reach that question on this record.

**CONCLUSION**

For the foregoing reasons, and for the reasons stated in the Amended Petition, the Court should deny Respondents' Motion to Dismiss, ECF 36, and set an evidentiary hearing under Rule 41(g) directed at the factual issues needed to decide the petition.

Dated: November 9, 2026

Respectfully submitted,

*/s/ Benjamin Berkman*

Antonio M. Romanucci (pro hac vice)
Sarah Raisch (pro hac vice)
Benjamin Berkman (pro hac vice)
ROMANUCCI & BLANDIN, LLC
321 N. Clark St., Suite 900
Chicago, IL 60654
P: (312) 458-1000
F: (312) 458-1004
aromanucci@rblaw.net
sraisch@rblaw.net
bberkman@rblaw.net

Kevin Riach
THE LAW OFFICE OF KEVIN C. RIACH, PLLC
125 Main St. SE, Suite 339
Minneapolis, MN 55414
(612) 203-8555
kevin@riachdefense.com

Attorneys for Petitioner

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

The undersigned certifies that this memorandum complies with the word limits of Local Rule 7.1(f) and the type-size limits of Local Rule 7.1(h). This memorandum was prepared using Microsoft Word in 13-point Times New Roman type and contains 4109 words, including headings, footnotes, and quotations, as counted by the word-processing software used to prepare it, and excluding the caption, signature block, and this certificate.

Dated: November 9, 2026

*/s/ Benjamin Berkman*
Benjamin Berkman